AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

FILED
At Albuquerque NM

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

AUG 17 2016

MATTHEW J. DYKMAN
CLERK

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>United States currency in the amounts of $10,920, $22,305, and $6,300, Samsung UHDTV 55" Smart TV, and 2008 Pontiac G8 | ) ) ) ) ) Case No. 16-MR-589 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of ____New Mexico____ is subject to forfeiture to the United States of America under ____21____ U.S.C. § 853(a), 881(a) *(describe the property)*:

United States currency in the amounts of $10,920, $22,305, and $6,300, Samsung UHDTV 55" Smart TV, and 2008 Pontiac G8, as more particularly described in the attached affidavit.

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Applicant's signature*

Larry Pantoja, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/17/2016__

*Judge's signature*

City and state: Albuquerque, New Mexico

Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Larry Pantoja, Special Agent (SA) of the Drug Enforcement Administration (DEA), being duly sworn, state as follows:

### INTRODUCTION

1.    I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) as a Special Agent of the DEA. As such, I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

2.    I have been a Special Agent since October 2015, and I am currently assigned to the Albuquerque District Office. My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, debriefing defendants, writing affidavits for and executing search warrants, and working with undercover agents and informants. I have received training and have experience in the investigation of violations of the federal drug and money laundering laws, including the offenses listed below. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations ("DTOs") to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions.

### PROPERTY TO BE SEIZED

3.    I make this Affidavit in support of an application for the issuance of a Seizure Warrant for:

**United States currency in the amount of $10,920.00,**

the ( SUBJECT CURRENCY #1), which was seized on June 21, 2016, from the residence of

1

Rigoberto Romero (ROMERO).

**Samsung UHDTV 55" Smart TV UNS5JU6400FX2A,**

the ( SUBJECT ASSEST #1), which was seized on June 21, 2016, from the residence of ROMERO.

**2008 Pontiac G8,**

the ( SUBJECT ASSEST #2), which was seized on June 21, 2016, from the residence of ROMERO.

**United States currency in the amount of $22,305.00,**

the ( SUBJECT CURRENCY #2), which was seized on June 21, 2016, from the residence of Ricardi Montoya (MONTOYA).

**United States currency in the amount of $6,300.00,**

the ( SUBJECT CURRENCY #3), which was seized on June 30, 2016, from a vehicle driven by David F. Gutierrez (GUTIERREZ).

## BACKGROUND

4. I believe that, based upon the facts detailed in this Affidavit, probable cause exists that the item of properties identified in paragraph 3 represents the proceeds of illegal drug trafficking activities and is therefore subject to forfeiture under 21 U.S.C. § 853(a)(1), 21 U.S.C. § 881(a)(4) and 21 U.S.C. § 881(a)(6).

5. I have been involved in an investigation regarding illegal drugs being illegally distributed in and around Albuquerque, New Mexico.

6. When I assert that a statement was made, I have either direct knowledge of the statement, or the information was provided by another law enforcement agent (who may have had either direct or hearsay knowledge of the statement), and I have either spoken to the agent or I have read and reviewed the agent's report.

7. Since this Affidavit is being submitted for the limited purpose of securing a Seizure Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing the seizure of the proceeds described in paragraph 3.

## FACTS AND CIRCUMSTANCES

8. On June 21, 2016, at approximately 10:00 a.m., detectives from the Bernalillo County Sheriff's Office (BCSO) established surveillance at the residence of ROMERO, which is 1915 ½ Williams Street, Albuquerque, New Mexico. Detectives were in possession of a State of New Mexico search warrant regarding ROMERO's narcotic trafficking activities. At approximately 11:45 a.m., surveillance observed a blue pick-up arrive at the residence and observed one male exit the blue pick-up and meet with ROMERO in the front area of the residence. At this point it was determined to execute the search warrant. Once BCSO members arrived to the front of the residence, ROMERO observed law enforcement officers and ran towards the back area of the residence and attempted to jump a fence. It should be noted Deputy Stephen Cotton was able detain ROMERO and placed him under arrest, without further incident. The driver of the blue pick-up was detained and later identified as Cesar DOMINGUEZ-SANTOS. The residence was secured without incident and nobody else was present at the residence. ROMERO and

3

DOMINGUEZ-SANTOS were both detained in the front area of the residence while the search warrant was conducted.

9. Shortly after the residence was secured, Detectives Brad Cooksey and Jerry Koppman determined to send members of the BCSO to the residence of Ricardi MONTOYA, since MONTOYA was a close drug associate of ROMERO. Based on previous intelligence and surveillances on MONTOYA, it was determined MONTOYA resides at 3845 Piermont NE, Albuquerque, NM.

10. While at ROMERO's residence, Det. Cooksey and Det. Koppman spoke with ROMERO and advised him that a State of New Mexico search warrant had been issued for his residence. ROMERO advised the detectives that he was interested in cooperating with them and advised them that there was approximately 12 pounds of methamphetamine in a dark blue Toyota Scion parked in front of the residence. ROMERO also stated that he was being sourced methamphetamine by individuals who live in Phoenix, AZ. At one point ROMERO showed the investigating agents where 9 brick shaped objects wrapped in black tape where located in the rear driver's side door.

11. ROMERO's residence was searched and agents discovered $10,920.00 (SUBJECT CURRENCY #1) in the rear section of a sofa located in a 1st floor bedroom. One Samsung UHDTV 55in flat screen (SUBJECT ASSET #1) located in another 1st floor bedroom. A white 2008 Pontiac G8 (SUBJECT ASSET #2) located in the front of the residence which also contained approximately 750.999 gross grams of suspected crystal methamphetamine.

12. Upon arriving at 3845 Piermont Drive NE, Albuquerque, New Mexico, Agents met MONTOYA who gave verbal consent to the search of his residence to SA Jeffrey McKinley and Det. Jake Nance. During the search of the residence, Task Force Officer (TFO) Jason Franklin

deployed narcotic K-9 "Angel". During the search of the residence, Angel alerted to a trained odor in the area of the kitchen stove and sink. Further investigation of the kitchen area revealed a hidden safe under the sink cabinet in the floor cut down into the concrete. The safe was covered by the wood bottom of the cabinet completely concealed from view. MONTOYA gave consent to search the safe, and assisted in opening the safe for agents. Agents accessed the safe and discovered $22,305.00 (SUBJECT CURRENCY #2). Canine Angel alerted to the US currency. MONTOYA stated that he owed "Santos" money for methamphetamines, and said the debt was supposed to be around $20,000.00. MONTOYA said there was approximately $20,000 to $21,000 in the safe. MONTOYA said approximately $13,000.00 was given to him by his Aunt, and approximately $7,000.00 was from the sale of methamphetamines. He also said he was scared that if the money was seized, he would not be able to pay "Santos" for the methamphetamines.

13.     During ROMERO's post arrest statement on June 21, 2016, ROMERO admitted to being a drug trafficker and was being supplied from a source in Phoenix, Arizona. ROMERO stated that he paid approximately $3,300 per pound of methamphetamines and made a profit of $200 per each pound sold. ROMERO also stated that he could get as much methamphetamines from his Phoenix source anytime he wanted.

14.     Following the initial seizures, subjects of the investigation provided intelligence stating that the ROMERO DTO was transporting multi-pound quantities of methamphetamine from Arizona to New Mexico on a bi-weekly basis. Information provided by a BCSO source of information (SOI) of this investigation indicated that a significant load of methamphetamine would be delivered to a residence in the area of 50th St NW and Ute Rd NW in Albuquerque, NM. Two vehicles were identified: a black Chrysler Sebring and a black Chevy Silverado truck.

15.     On the evening of June 29, 2016, BCSO established surveillance in the area of 50th

5

St NW and Ute Rd NW in Albuquerque, NM in an attempt to observe the two vehicles arrive in the area. At approximately 7:05 p.m., a black Chevy Silverado bearing NM temporary tag, 16T-235020, was approached and the driver was detained and questioned. The driver of the Chevy Silverado was identified as Lavern PARPART. PARPART stated his friend "David" had asked him to drive the black Chevy Silverado to New Mexico. PARPART also stated that David was a short distance behind him. Approximately 5-10 minutes later, BCSO detectives made contact with a black Chrysler Sebring bearing AZ license plates BTV0179. The driver was identified as Dave GUTIERREZ. GUTIERREZ initially stated the black Chrysler Sebring belonged to his wife, but then stated that the car was given to him by "Hector". BCSO detectives noticed a large amount of U.S. currency in the back of the vehicle. GUTIERREZ said he knew the currency was there, but it wasn't his and would not tell detectives where it came from or who put it there. Both drivers were questioned and later released. The black Chrysler Sebring and the black Chevy Silverado were towed to Madrid Towing located at 3310 San Ignacio SW, Albuquerque, NM, and stored in a secure lot pending a State of New Mexico search warrant.

16. On June 30, 2016, the black Chrysler Sebring and the black Chevy Silverado were searched subsequent to obtained State of New Mexico search warrants. BCSO detectives discovered $6,300.00 (SUBJECT CURRENCY #3) in the rear center console of the Chrysler Sebring which also contained approximately 6,900 gross grams of suspected crystal methamphetamine discovered in the trunk.

17. Additionally, on June 8, 2016, SA Larry Pantoja received information from New Mexico Workforce Solutions that ROMERO and MONTOYA did not have any reported wages in the State of New Mexico.

18. Furthermore, on July 26, 2016, SA Rodriguez spoke with Lesly Palacios, who lived

with ROMERO and also has a child with ROMERO, telephonically about the Samsung UHDTV 55" Smart TV (SUBJECT ASSEST #1) which was found in its original box in a 1st floor bedroom during the search warrant executed on June 21, 2016 at 1915 ½ Williams Street, Albuquerque, NM. Mrs. Palacios stated that she was unaware of the Samsung UHDTV 55" Smart TV (SUBJECT ASSEST #1) and did not know where it came from. SA Rodriguez asked if there were any receipts for the purchase of the Samsung UHDTV 55" Smart TV (SUBJECT ASSEST #1) and Mrs. Palacios stated that she did not know of any receipts. It should be noted that Lesly Palacios was present during the latter part of the search warrant on June 21, 2016.

19. Based on the above facts and circumstances, there is probable cause to believe that the aforementioned SUBJECT CURRENCY #1, #2, #3 and SUBJECT ASSET #1 represent proceeds of illegal drug trafficking, and SUBJECT ASSET #2 represents a vehicle used to facilitate illegal drug trafficking, as described in Title 21, United States Code. As such, the aforementioned property of ROMERO, MONTOYA and GUTIERREZ is seizable and forfeitable to the United States Government pursuant to 21 U.S.C. §§ 853(a)(1) and (a)(2), 21 U.S.C. § 881(a)(4) and 21 U.S.C. § 881(a)(6).

I, therefore, request that the Court issue a Seizure Warrant as authorized under 21 U.S.C. § 853(f) because:

    a. There is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture, and

    b. An order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.

I swear that this information is true and correct to the best of my knowledge.

_____
Larry Pantoja, Special Agent
U.S. Drug Enforcement Administration
Albuquerque District Office

Sworn to before me, this 17th day of August, 2016

_____
United States Magistrate Judge
New Mexico Judicial District
Albuquerque, New Mexico

8